# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

GLENN A. HEATH,

    Petitioner,

v.

JOE NORWOOD, Secretary of Corrections, et al.,

    Respondents.

Case No. 17-3114-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on Glenn A. Heath's pro se[1] Petition for Writ of Habeas Relief (Doc. 1), respondents' Answer and Return (Doc. 16), and petitioner's Traverse (Doc. 19). Generally, petitioner attacks respondent the Kansas Prison Review Board's decision to deny petitioner parole on three grounds: lack of due process, lack of equal protection, and violation of his First Amendment rights. For reasons explained below, the court denies the Petition.

**I.    Facts**

The Kansas Court of Appeals summarized the facts of petitioner's state-court case this way:

> [Petitioner] is an inmate at the Lansing Correctional Facility. On June 28, 1996, [petitioner] was sentenced to life imprisonment for committing first-degree felony murder and to 68 months for committing abuse of a child. The facts of [petitioner's] 1996 convictions [are] as follows:

---

[1]    Because petitioner proceeds pro se, the court construes his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

On the morning of October 21, 1995, [petitioner] was caring for Cain Baker, the 2-year-old son of [petitioner's] live-in girlfriend. Because the child was vomiting, [petitioner] called 911. Emergency personnel responded and transported the child to the hospital. The doctors there soon realized that Cain was not just ill; he was badly injured and bleeding internally. The police almost immediately suspected that [petitioner] had inflicted Cain's injuries. The police arrested [petitioner] later that same day. He has been in custody continuously since October 21, 1995. On October 23, 1995, Cain died as the result of internal bleeding caused by blunt force trauma to his abdomen. [A surgeon who operated on Cain described the injury as comparable to falling from a two-story building onto a chair leg].

The State charged [petitioner] with first-degree felony murder, an off-grid offense, and a count of felony child abuse. At trial in 1996, the jury found [petitioner] guilty on each count. The district court sentenced [petitioner] to life in prison on the felony-murder count. The district court found that the aggravating circumstances of the felony child abuse offense (Cain was particularly vulnerable due to age and [petitioner's] conduct during the commission of the offense manifested excessive brutality to the victim not normally present in child abuse) were substantial and compelling reasons to depart upward on sentence duration. On that count, the district court imposed a sentence of 68 months to run consecutively to [petitioner's] life sentence. On appeal, the Supreme Court affirmed the felony-murder conviction and sentence. However, the Supreme Court reversed [petitioner's] conviction for child abuse and vacated that sentence. Because only one act formed the basis for both the child abuse and the murder convictions, double jeopardy principles required that the offenses be merged into the felony murder.

[Petitioner] became eligible for parole on October 21, 2010. In April 2011, he appeared before the Kansas Parole Board (now the Kansas Prisoner Review Board) and was denied parole. The Parole Board cited the serious nature/circumstances of the crime; violent nature of the crime; and objections as reasons for denying parole.

[Petitioner] challenged the denial of parole on [Kan. Stat. Ann. §] 60-1501 habeas corpus grounds, claiming the denial of parole violated his due process rights under the Fourteenth Amendment of the United States Constitution. Specifically, he alleged the Parole Board acted in an arbitrary and capricious manner by using vague stock language in the Action Notice denying parole. [Petitioner] also alleged that the Parole Board should not have considered the facts of his overturned child abuse conviction, and he disputed the finding that he was not behaviorally disposed for parole. Ultimately, a panel of this court affirmed the district court's dismissal of his habeas corpus petition and agreed the Parole Board did not act beyond its discretion or on an inaccurate record.

On or before August 6, 2015, [petitioner] filed an apology letter with the Apology Repository in the Kansas Department of Corrections. At some point, [petitioner] also submitted a letter to the Kansas Prisoner Review Board, explaining his

position on the convictions. In that letter, he claimed that his conviction for murder was improper and unsupported by the facts. Nevertheless, [petitioner] acknowledged that he had failed to protect the child and stated that he accepted the judgment whether or not it is correct, right, and fair or just. On August 21, 2015, the Review Board held a public comment session regarding the question of whether it should parole [petitioner]. Multiple people objected to his parole and requested that [petitioner] remain in prison.

On September 2, 2015, [petitioner] appeared before the Review Board. At the hearing, [petitioner] indicated that he lied to police initially about the events leading to the child's injuries; however, when asked by the Review Board about the time before the crime, he denied intentionally abusing or injuring the child. He further suggested that the evidence regarding the cause of the child's injuries was inconclusive. [Petitioner] denied responsibility and instead told the Review Board that he thought the child was injured at a neighborhood park.

The Review Board noted [petitioner] had no disciplinary violations during his incarceration. Moreover, [petitioner] described various personal advancements he had made while in prison. In particular, he mentioned that he and his wife purchased a home, that he had a job lined up should he be released, and that he had "used every opportunity to progress" while in prison.

On October 14, 2015, the Review Board denied [petitioner's] request for parole. In doing so, it cited the serious nature and circumstances of [petitioner's] crime; his denial of responsibility for injuring the child; and the objections received from the public. Thereafter, [petitioner] filed a pro se [Kan. Stat. Ann. §] 60-1501 petition and memorandum in support in the district court. On November 16, 2015, the district court issued a writ of habeas corpus and set the matter for hearing. Subsequently, the State filed a response and motion to dismiss for failure to state a claim. The State argued that the Review Board had followed all statutory requirements and that its decision to deny parole was not arbitrary or capricious. In response, [petitioner] argued there was insufficient evidence to support finding him guilty of felony murder. Among other arguments, he also indicated that his clean record in prison and his pursuit and completion of self-help courses demonstrated his ability to return to society successfully.

The district court held a hearing on February 16, 2016. After hearing the arguments presented, the district court granted the State's motion to dismiss. Specifically, the district court focused on the ability of the Review Board to consider the facts of the conviction in determining the nature of the crime. The district court further noted the inability of a reviewing court to substitute its judgement for that of the Review Board and found that the Review Board had adequately followed the statutory requirements.

*Heath v. Roberts*, 386 P.3d 926, 2016 WL 7324457, at *1–2 (Kan. Ct. App. Dec. 16, 2016)

(unpublished table decision) (internal citations, alterations, and quotation marks omitted).

3

Petitioner timely appealed the Kansas state district court's decision to the Kansas Court of Appeals. *Id.* at *2. In his appeal, petitioner raised a variety of issues. They included the due process, equal protection, and First Amendment issues he raises here. In the end, the Kansas Court of Appeals affirmed the district court's decision. *Id.* at *4. On April 26, 2017, the Kansas Supreme Court denied review. From the date the Review Board denied petitioner parole, he has served 21 years in prison.

Petitioner is not the only person convicted of felony-murder for the death of a child whose parole status the Review Board considered recently. The Review Board recently granted two other inmates—Vincent Altum and Kelly Williams—parole. Mr. Altum was convicted of killing his girlfriend's 14-month old son after he struck the child multiple times in the head and shook him. Mr. Williams was convicted of killing his girlfriend's three-year old daughter after violently shaking her and beating her. Both inmates had disciplinary actions taken against them during their time in prison. The Review Board released Mr. Altum on parole after he served 18 years. Mr. Williams served 19 years before the Review Board granted him parole. The Review Board also has released a prisoner who, like petitioner, maintains that he is innocent of the crime for which he was convicted. In particular, Mr. Craig Wilson was convicted of sodomizing a child.[2] While the court is not certain how long Mr. Wilson spent in prison, he has served more time than petitioner.[3]

Three months after the Kansas Supreme Court denied review of the Kansas Court of Appeals decision, petitioner filed a writ of habeas corpus with our court. While his filings are

---

[2] This fact does not appear in the state court factual record or in petitioner's filings, but the court takes judicial notice of this fact. *See State v. Wilson*, 795 P.2d 336, 337 (Kan. 1990); *see also Mitchell v. Dowling*, 672 F. App'x 792, 793 n.2 (10th Cir. 2016) (taking judicial of a public record when reviewing a district court's dismissal of a habeas petition).

[3] *See* note 2. The court assumes that this fact is true because the Kansas Supreme Court reviewed his case in 1990—five years before petitioner was arrested. *See Wilson*, 795 P.2d 336.

difficult to follow at times, the Petition alleges three grounds for support. First, it argues that the Review Board[4] violated petitioner's due process and equal protection rights. Second, it contends that petitioner has a contractual right to parole under Kan. Stat. Ann. §§ 75-5201, *et seq.* and 22-3717(g)(2) and (h). And thus, it contends, the Review Board must support its decision with evidence. Failure to do so, it argues, amounts to a due process violation. Third, petitioner argues that the Review Board's actions were arbitrary and capricious. He also raises a First Amendment claim in his Memorandum in Support of his Petition.[5]

After sifting through petitioner's filings, the court organizes the grounds for relief slightly differently than the Petition does. Under the court's formulation, the first ground of relief argues that the Review Board denied petitioner's due process rights by acting arbitrarily and capriciously and refusing to disclose the evidence on which it based its decision. It contends that petitioner has a right to due process because he has a liberty interest created by Kan. Stat. Ann. § 75-5201 *et seq.* and § 22-3717(g)(2) and (h). Also, it argues that the Ninth Amendment creates a liberty interest in parole. Second, the Petition contends that the Review Board denied petitioner parole even though it granted parole to similarly situated prisoners, thus violating the Equal Protection Clause. Third, the Petition contends, the Review Board conditioned his parole status on him asserting a government message. This compulsion, petitioner contends, violates the First Amendment.

---

[4] The Petition alleges that the state court violated due process and equal protection. But petitioner's memorandum in support of the petition only attacks the Review Board's actions—not the state court decisions. So, the court construes this ground of relief as alleging that the Review Board violated the Due Process and Equal Protection Clauses.

[5] The Petition also appears to raise a number of state law issues. But a federal habeas petition is no place to raise state law issues. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Consequently, the court does not address any state law issues raised by the Petition here.

For reasons explained below, none of these provide a basis to issue a writ of habeas corpus. The court begins its discussion with an overview of the correct standard of review. Then, the court addresses, in turn, each ground for relief.[6]

## II. Legal Standard

When a petitioner challenges a parole board's decision to deny parole, petitioner must file a petition under 28 U.S.C. § 2241. *Heath v. McKune*, No. 11-3194-SAC, 2012 WL 10351, at *2 (D. Kan. Jan. 3, 2012). Section 2241 allows a petitioner habeas relief when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The court can deny the petition without an evidentiary hearing if the Petition's allegations—to the extent the existing factual record does not controvert them—establish that petitioner is not entitled to habeas relief. *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998). The court is mindful that "[t]he role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judge"—or in this case, the Review Board. *Davis v. Ayala*, 135 S. Ct. 2187, 2202 (2015) (internal citation and quotation omitted).

## III. Discussion

### A. Due Process

"The Due Process Clause applies when government action deprives a person of liberty or property." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). So, the first question the court must answer is whether a protectable right is at stake here. *Id.*

---

[6] Because the court denies the Petition, the court also denies petitioner's Motion for Hearing (Doc. 20) and Motion for Production of Documents (Doc. 21).

6

A protectable right is not simply something that a person professes to have an abstract need or desire to acquire. *Id.* Instead, a person has a protectable liberty or property right when he has a "legitimate claim of entitlement" to something, like parole. *Id.* The Constitution creates no "legitimate claim of entitlement" to parole before the original sentence imposed by the sentencing court expires. *Id.* But a state statute can create a "legitimate claim of entitlement" to parole when the statute leaves little discretion to a parole board. *Id.* at 12; *cf. Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1994) (holding that Utah's parole statute did not create a liberty interest because it gave its parole board wide discretion to determine whether to release a prisoner on parole). The question, then, is whether Kansas's parole statute leaves the Review Board with little discretion.

Both the Kansas Supreme Court and the Tenth Circuit have addressed this very issue. *See Johnson v. Kan. Parole Bd.*, 419 F. App'x 867 (10th Cir. 2011); *Gilmore v. Kan. Parole Bd.*, 756 P.2d 410 (Kan. 1988). And both concluded that the Kansas parole statute is discretionary because it directs the Review Board to consider a wide range of factors and confers the option of granting parole. *See Johnson*, 419 F. App'x at 871 ("But the Kansas Supreme Court has held the Kansas parole statute is discretionary; it therefore does not create a protected liberty interest."); *Gilmore*, 756 P.2d at 415 ("[T]he Kansas parole statute does not give rise to a liberty interest when the matter before the Board is the *granting* or *denial* of parole to one in custody."). Indeed, the Kansas parole statute provides that the Review Board "may" grant parole if certain conditions are met. Kan. Stat. Ann. § 22-3717(h); *cf. Greenholtz*, 442 U.S. at 11 (holding that a statute that provided that the parole board "shall" grant parole unless certain conditions are met creates a protectable interest in parole). These authorities recognize that petitioner has no liberty interest in parole under the Kansas statute. Petitioner's due process argument thus fails.

Naturally, petitioner disagrees and argues that his liberty interest in parole stems from two sources. First, he contends that state law—specifically Kan. Stat. Ann. § 75-5201 *et seq.* and § 22-3717(g)(2) and (h)—creates a contract between him and Kansas. In concept, at least, the authorities recognize that a statute that creates an express or implied contract may create a property interest, triggering the Due Process Clause's protection. *Pater v. City of Casper*, 646 F.3d 1290, 1294 (10th Cir. 2011); *see also Dodge v. Bd. of Educ. of City of Chi.*, 302 U.S. 74, 78 (1937) (explaining that if a statute provides for the execution of a contract on behalf of the state or settles disputed rights on defined terms, it creates a contract between the state and a citizen). Here, Kan. Stat. Ann. § 75-5201 *et seq.* creates a contract. But the contract is one that does not bind the Review Board. And § 75-5201 *et seq.* does not remove the Review Board's discretion over the decision to grant parole.

Kan. Stat. Ann. § 75-5201 *et seq.* generally addresses how the Department of Corrections treats and rehabilitates convicted felons. Kan. Stat. Ann. § 75-5201. One step in that rehabilitation is an agreement between the Secretary of Corrections and an inmate sentenced for an "off grid crime"—such as felony murder. *Id.* § 75-5210a(a). Under this agreement, the Secretary and the inmate agree that the inmate must meet certain educational, vocational, mental health, and other bench marks before the inmate is released on parole. *Id.* When the inmate meets these benchmarks, the Secretary reports the inmate's success to the Review Board. *Id.* Kansas law also prohibits the Review Board from releasing an inmate on parole until the Secretary informs the board that the inmate has fulfilled the agreement. *Id.* § 22-3717(g)(2). While meeting the benchmarks of the agreement is a necessary requirement for parole, it is not the only requirement. The Review Board also must conclude that: (1) the inmate can be a law-abiding citizen once released; and (2) releasing the inmate will not harm the community or the

8

inmate. *Id.* Even then, the Review Board retains discretion to release the inmate or not. *Id.*; *see also Gilmore*, 756 P.2d at 415.

If petitioner argued that the Secretary of Corrections refused to create a rehabilitation agreement under § 75-5210a, his due process argument might persuade the court. But the issue before the court is whether the *Review Board* denied petitioner a protected right without due process—not the Secretary of Corrections. And § 75-5210a does not create a protectable right to parole. The Secretary must develop a rehabilitation plan for petitioner, but § 75-5210a does not mandate that petitioner's released on parole once he fulfills the terms of the agreement. Instead, it simply provides that the Secretary must inform the Review Board of petitioner's achievement. From there, the Review Board, in its discretion, decides whether to grant parole. *See* Kan. Stat. Ann. § 22-3717(g). Neither Kan. Stat. Ann. § 75-5201 *et seq.* nor § 22-3717(g) or (h) create a contract that gives petitioner a protected property or liberty interest in parole.

Petitioner also argues that the Ninth Amendment granted him a right to parole. He cites *Charles v. Brown*, 495 F. Supp. 862 (N.D. Ala. 1980), as support but *Charles* does not help him. There, plaintiffs brought a § 1983 action, arguing that defendants published an article about their child without permission. *Id.* at 863. This article, plaintiffs alleged, subjected them to public contempt and ridicule. *Id.* They alleged that this treatment violated the Ninth Amendment because that amendment protects the right to privacy. *Id.* Defendants filed a motion to dismiss, arguing that the Ninth Amendment created no such a right. *Id.* The district court agreed. *Id.* It reasoned that the Ninth Amendment does not raise unenumerated rights to a constitutional level; instead, it recognizes that unenumerated rights exist and those that rise to a constitutional level come from the penumbras of the first eight amendments, or the liberty concept in the Fourteenth

9

Amendment. *Id.* In short, the court explained, the Ninth Amendment is simply a rule of construction for the Constitution. *Id.* at 864.

While the court finds no Tenth Circuit case explicitly adopting *Charles*'s rationale, the court predicts that it would do so if presented with the issue. *See United States v. Baer*, 235 F.3d 561, 564 (10th Cir. 2000) (holding that the Ninth Amendment does not create an unenumerated constitutional right to bear firearms separate from the Second Amendment). So, while the Ninth Amendment prohibits courts from concluding that a right does not exist simply because it is not listed in the Constitution, it does not create a right to parole, or even create a right to liberty in general. That responsibility is left to the first eight amendments and the Fourteenth Amendment. And, as already explained, nothing in the Constitution or state law creates a protectable right to parole. *See Greenholtz*, 442 U.S. at 7; *Gilmore*, 756 P.2d at 415.

### B. Equal Protection

Next, petitioner argues that the Review Board denied him equal protection under the law because it has granted other similarly situated inmates parole while denying him parole. In making this argument, he invokes the Equal Protection Clause's "class of one" doctrine.

Typically, a petition must establish an equal protection violation by showing that a governmental decision-maker intentionally discriminated against someone because that person is part of a particular *class* of people. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685–86 (10th Cir. 2012). But under the "class of one" doctrine, petitioner can establish an equal protection violation by showing that a government actor discriminated against a *specific* individual. *Id.* at 688. To make this showing, petitioner must satisfy a two-part test. First, he must show that a government actor intentionally treated him differently than it treated others who are similarly situated. *Id.* This requires proof that individuals with materially similar traits exist. *Id.* Second,

10

the petitioner must show that no rational basis existed to treat him differently based on any differences between the petitioner and those with whom he compares himself. *Id.* Courts, however, approach these cases with caution. *A.M. v. Holmes*, 830 F.3d 1123, 1167 (10th Cir. 2016). Otherwise, every exercise of governmental discretion could give rise to a "class of one" claim. *Id.*

Here, petitioner argues that he is similarly situated with two other inmates—Mr. Altum and Mr. Williams—who the Review Board recently released on parole. Like petitioner, both were convicted for killing young children. But petitioner argues several facts made them even less qualified for release than he is. For example, the other prisoners presented a "higher risk" for release because of their behavior in prison. Specifically, Mr. Altum and Mr. Williams each received four disciplinary reports in prison while petitioner received none. Doc. 1 at 21. And, petitioner contends, their convictions involved much more brutal facts. Mr. Williams shook a three-year old so forcefully that she died. Mr. Altum struck a 14-month old on the head several times, which caused the child's death. Despite the brutality of their crimes, both inmates served less time before parole than petitioner has served.

Petitioner also asserts that his situation is like another inmate's situation—Mr. Wilson's. Both petitioner and Mr. Wilson have maintained their innocence, yet the Review Board released Mr. Wilson on parole.

Petitioner, however, fails to identify any other similarities with the other prisoners. For instance, petitioner fails to specify whether the public or the victim's family expressed significant opposition to their release. *See* Kan. Stat. Ann. § 22-3717(h) (requiring the Review Board to consider the public and victim's family's statements when deciding whether to release a prisoner on parole). Also, while both Mr. Altum and Mr. Williams were convicted for killing

11

children, the facts of their convictions and petitioner's conviction differ. Importantly, petitioner struck a child with the same amount of force as if the child fell from a two-story building onto a chair leg. Neither Mr. Altum nor Mr. Williams exerted as much force in one blow. Mr. Wilson was convicted of sodomizing a child, so his conviction—while serious—also involved different conduct than the facts supporting petitioner's conviction. Mr. Wilson also served more time in prison when the Review Board released him than petitioner had served when the Review Board considered his request. Finally, nothing in the record indicates Mr. Altum or Mr. Williams denied responsibility for their crimes when the Review Board released them. So, the court cannot conclude that petitioner and the other inmates are similarly situated.

Petitioner also fails to establish the second prong on the class of one test, *i.e.*, that the Review Board had no rational basis for denying him parole while releasing the other inmates based on their differences. A decision has a rational basis when an objectively reasonable basis exists to treat petitioner and those he compares himself with differently based on the differences between them. *Jicarilla Apache Nation v. Rio Arriba Cty.*, 440 F.3d 1202, 1211 (10th Cir. 2006). As already identified, two notable differences exist between Mr. Altum and Mr. William's cases and petitioner's case. And these differences provide a rational basis for the differing decisions. First, petitioner refuses to accept responsibility for his crime. And second, the public and the victim's family opposed granting petitioner parole. No similar objections existed for Mr. Altum or Mr. Williams. Given these differences, the court cannot say that the Review Board acted irrationally based. Indeed, the Kansas parole statute requires the Review Board to consider the comments of the public and the victim's family about the potential parolee, as well as the inmate's acceptance of responsibility for his crime. Kan. Stat. Ann. § 22-3717(h).

Petitioner argues that the Review Board acted irrationally because it granted parole to Mr. Altum and Mr. Williams, who committed more brutal crimes. The court disagrees. The medical expert who testified at petitioner's trial described the amount of force needed to cause the injury that ultimately led to the child's death as equivalent to the child falling from a "two-story building onto the bottom of the leg of a chair." *State v. Heath*, 957 P.2d 449, 457 (Kan. 1998). While the other prisoners may have struck the child they killed multiple times, the Review Board is not required to conclude that their conduct was more brutal simply because the other inmates struck the child more times. This is particularly true because the amount of force described in petitioner's case was not presented by Mr. Altum or Mr. Williams's case. And, regardless, the nature of circumstances of the crime is only one factor among many the Review Board considers. *See* Kan. Stat. Ann. § 22-3717(h).

Petitioner also argues that the Review Board should not have considered the amount of force used because it forms the basis of the aggravating sentencing factors that the Kansas Supreme Court held were unconstitutional. Doc. 1 at 15. Petitioner misinterprets the Kansas Supreme Court's ruling. When the original trial court imposed petitioner's sentence, it sentenced him to life in prison for felony-murder, as Kansas law requires. *State v. Heath*, 957 P.2d at 461. The trial judge also imposed 68 months for a separate conviction for child abuse. *Id.* While the sentencing guidelines recommended a lower sentence, the trial court found "aggravating sentencing factors" and thus imposed a heavier sentence because of the nature of the child abuse. *Id.* The Kansas Supreme Court reversed the child abuse conviction because the facts supporting that conviction were the same ones as those supporting the felony murder conviction. And thus, the two convictions violated the Constitution's prohibition on double jeopardy. *Id.*

13

This decision did not reverse the jury's factual findings supporting the felony-murder or child abuse conviction. Instead, the Kansas Supreme Court's ruling was derived from a legal conclusion—namely, that petitioner could not be convicted of both felony-murder and child abuse. *Id.* Because the Constitution bars the state from convicting someone twice for the same crime, the Kansas Supreme Court reversed his conviction and vacated his sentence for the child abuse conviction. *Id.* This means the Review Board cannot consider the child abuse *conviction* when making a parole decision. *See United States v. Tucker*, 404 U.S. 443, 447 (1972) (holding that a sentencing judge violates a person's rights when it considers vacated convictions when imposing its sentence). But because the Kansas Supreme Court decision never held that the jury lacked sufficient evidence to convict petitioner for felony murder, the Review Board properly could consider the *facts* supporting that conviction—including the method by which he killed the child. *Id.*; *see also Heath v. McKune*, 2012 WL 10351, at *2 (explaining, in petitioner's earlier habeas petition, that the "child abuse conviction was overturned because it was duplicative, not because he was found by a judge or jury not to have committed any acts of abuse").

Petitioner also argues that the Review Board's decision was irrational because Mr. Altum and Mr. Williams received more disciplinary actions while in custody, so they were considered a "higher risk" prisoner than petitioner, who presented a "lower risk." While this difference may exist, it does not require the Review Board—when exercising its discretion—to conclude that petitioner should be released on parole. Indeed, the decision to grant parole involves numerous considerations. *Greenholtz*, 442 U.S. at 8. And other considerations—like plaintiff's refusal to accept responsibility, the objections of the public and the victim's family, and the serious nature of petitioner's crime—provided a rational basis to deny petitioner parole. This difference does not warrant a conclusion that the Review Board discriminated against petitioner.

14

*Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004), helps illustrate why petitioner's claim fails here. In that case, the plaintiff sued a detective who failed to investigate her allegations of rape vigorously under 42 U.S.C. § 1983. *Id.* at 1200. She argued, in relevant part, that she was a "class of one" and that the detective treated her differently than similarly situated rape survivors. *Id.* at 1210. The detective moved for summary judgment, and the district court granted the motion. *Id.* at 1200. The Tenth Circuit affirmed, explaining that plaintiff failed to adduce evidence to support the first element of a class of one claim, *i.e.*, that the detective treated her differently than other similarly situated rape survivors. *Id.* at 1214.

Plaintiff's failure to produce any evidence about how vigorously the detective investigated allegations made by rape survivors with materially similar circumstances particularly concerned the Circuit. *Id.* at 1215. It analogized the decision to investigate a crime to the decision to prosecute a crime, and noted that the Supreme Court has imposed a heightened pleading burden on plaintiffs who allege that prosecutors discriminatorily file criminal charges. *Id.* at 1214 (citing *United States v. Armstrong*, 517 U.S. 456, 463–64 (1996)). The Supreme Court imposed this burden, the Circuit explained, because the decision to prosecute a case—much like the decision to investigate an alleged crime—requires the decision-maker to evaluate many legitimate factors. *Id.* And some of those factors are not ones the court can evaluate properly. *Id.* Because so many considerations figured in both decisions, the Tenth Circuit reasoned, plaintiff needed—but ultimately failed—to adduce evidence that her case had extremely similar strengths and weaknesses as other cases that the detective decided to investigate. *Id.* at 1215. Such a flaw was fatal to her class of one claim. *Id.*

The decision to grant parole involves a similarly large number of factors, many of which the court cannot evaluate properly. The Kansas statute enumerates more than 15 different

considerations that the Review Board must consider.  *See* Kan. Stat. Ann. § 22-3717(h).  And the Supreme Court has recognized that the decision to grant parole is a difficult one that requires an individualized assessment.  *See Greenholtz*, 442 U.S. at 8 ("In parole releases, . . . few certainties exist.  In each case, the decision differs from the traditional mold of judicial decisionmaking in that the choice involves a synthesis of record facts and personal observation filtered through the experience of the decisionmaker and leading to a predictive judgment as to what is best both for the individual inmate and for the community."); *see also Jennings*, 383 F.3d at 1215 ("[T]he multiplicity of relevant (nondiscriminatory) variables requires plaintiff to provide compelling evidence of other similarly situated persons who were in fact treated differently.").

Petitioner has failed to meet the heavy burden imposed by *Jennings*.  While petitioner has identified other inmates who the Review Board has released on parole and some have similar traits as petitioner, the factual similarities petitioner identifies are not enough to sustain a "class of one" claim.  And the evident differences support rational reasons for treating petitioner differently from Mr. Altum, Mr. Williams, and Mr. Wilson.  Moreover, the decision to grant parole—like the decision to prosecute a case or investigate an alleged crime—requires the evaluation of many factors, some of which the court simply is unequipped to evaluate properly.  The court denies the petition for these reasons.

### C. First Amendment

Finally, petitioner argues that the Review Board impermissibly denied parole because he did not admit responsibility for his crime.  The Kansas parole statute requires the Review Board to consider whether an inmate has accepted responsibility for his crime when deciding whether to release him.  He argues that this amounts to compelled speech, which violates the First Amendment.

16

In general, the First Amendment "'prohibits the government from telling people what they must say.'" *Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*, 570 U.S. 205, 213 (2013) (quoting *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006) (further citations omitted)). And the government cannot condition eligibility of benefits on speaking a certain message. *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 674 (1996). The court assumes, without deciding, that the Review Board compels speech by considering whether a prisoner has accepted responsibility for his crime when making its parole decision and that this consideration amounts to a content-based law that requires exacting First Amendment scrutiny. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 798 (1988) (evaluating a content-based state law under exacting strict scrutiny).[7]

But even when the court applies "exacting scrutiny" to the Kansas parole statute, it survives that challenge. To survive this exacting scrutiny, the government must prove that the law is narrowly tailored to serve compelling governmental interests. *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015).

Here, the Kansas parole statute serves a compelling governmental interest and is narrowly tailored to serve that purpose. Kansas's prison system has as a goal to rehabilitate any convicted felon. *See* Kan. Stat. Ann. § 75-5201 ("The legislative purpose in enacting this act [establishing the Department of Corrections] shall be deemed to be establishment of a policy of treatment of persons convicted of felonies in this state by placing maximum emphasis on rehabilitation . . . ."). Parole is part of that process. *Id.* And states have a "vital interest in

---

[7] Petitioner argues that the government can infringe speech only when a "clear and present danger" exists. Doc. 1 at 16. But that test applies only when a court evaluates whether the government can suppress speech because it might lead to unlawful activity. *See, e.g., Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 253 (2002) ("The government may suppress speech for advocating the use of force or a violation of law only if such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." (internal citation and quotation omitted)).

rehabilitating" prisoners.[8] *McKune v. Lile*, 536 U.S. 24, 33 (2002). "Acceptance of responsibility is the beginning of rehabilitation. And a recognition that there are rewards for those who attempt to reform is a vital and necessary step toward completion." *Id.* at 47; *see also Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010) (holding that a parole board did not violate the First Amendment when it denied a prisoner's parole request in part because the prisoner did not admit guilt). The Review Board did not violate petitioner's First Amendment rights by considering his proclamation of innocence—or his decision to accept his culpability—in its decision to deny him parole.

### D. Certificate of Appealability

Under the Rules Governing Section 2254 Cases,[9] the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2254 Cases, Rule 11(a). Without such a certificate, a petitioner may not appeal the denial of his or her habeas petition. But "[i]f the court denies a certificate, the [petitioner] may . . . seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." *Id.* Because the court denies the Petition, the court must decide whether to issue a certificate of appealability.

Under 28 U.S.C. § 2253(c)(2), the court can issue a certificate of appealability to petitioner "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy this standard by demonstrating that "reasonable jurists would find the

---

[8] While *McKune* involved a convicted sex offender, the court predicts that the Tenth Circuit would find the goal of rehabilitating non-sex offender prisoners as a "vital" goal if presented with the issue.

[9] While the court has found no case applying these rules to a § 2241 case, the Rules Governing Section 2254 cases provide that a "district court may apply any or all of these rules to a habeas corpus petition not [brought under § 2254]." Rules Governing Section 2254 Cases, Rule 1(b). The court elects to do so here.

district court's assessment of the constitutional claims debatable or wrong," or that the issues presented in the petition are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983), *superseded in part by* 28 U.S.C. § 2253).

Here, the court declines to issue a certificate of appealability. Nothing suggests that the court's rulings in this case are debatable or incorrect, and no record authority suggests that the Tenth Circuit would resolve this case any differently. While it declines to issue the certificate, the court notes that petitioner may not appeal the denial of a certificate but he still may seek a certificate of appealability from the Tenth Circuit. *See* Rules Governing Section 2254 Cases, Rule 11(a).

## IV. Conclusion

For reasons explained above, the court denies the Petition for Writ of Habeas Corpus (Doc. 1), the Motion for Hearing (Doc. 20), and the Motion to Produce (Doc. 21).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Petition for Writ of Habeas Corpus (Doc. 1) is denied.

**IT IS FURTHER ORDERED THAT** petitioner's Motion for Hearing (Doc. 20) is denied.

**IT IS FURTHER ORDERED THAT** petitioner's Motion to Produce (Doc. 21) is denied.

**IT IS FURTHER ORDERED THAT** the certificate of appealability is denied.

**IT IS SO ORDERED.**

**Dated this 5th day of September, 2018, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**